UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RUSSELL A. STODDARD,

    Plaintiff,

v.                                                  Case No. 3:23-cv-371-MMH-LLL

SCOTT A. HEILIG, et al.,

    Defendants.

_____

## ORDER

### I. Status

Plaintiff Russell A. Stoddard, an inmate of the Florida Department of Corrections (FDOC), initiated this action in the Northern District of Florida by filing a pro se Civil Rights Complaint (Doc. 1; Complaint) under 42 U.S.C. § 1983. In April 2023, the Honorable Michael J. Frank, United States Magistrate Judge, transferred the case to this Court. See Doc. 3. Stoddard names three Defendants: (1) Officer Scott A. Heilig; (2) Lieutenant Smith; and (3) Major McGee. Complaint at 2-3. He raises claims of excessive force and failure to protect. See generally id.

This matter is before the Court on Defendants Smith and McGee's Motion to Dismiss Complaint (Doc. 24; Motion).[1] Stoddard filed a response to the Motion (Doc. 30; Response). The Motion is ripe for review.

## II. Stoddard's Allegations[2]

Stoddard alleges that on April 6, 2020, officials transferred him to Regional Medical Center – West. Complaint at 5. After his transfer, gang members advised Stoddard that Defendant Heilig had "a contract on [Stoddard's] head because of rum[or]s that [Stoddard] was coming on[to] his girlfriend." Id. According to Stoddard, the gang members refused to accept Heilig's "contract." Id. Stoddard alleges that on April 7, 2020, he advised Defendant Smith about Heilig's threats towards Stoddard and asked that he be transferred to another facility Id. Stoddard contends Smith disregarded his pleas and responded that Heilig would never risk his career by making such threats. Id. Stoddard also asserts that on April 8, 2020, he advised Defendant McGee about Heilig's threats, to which McGee replied that Stoddard should "just lay low" and he would consider the issue. Id. at 6.

---

[1] Defendant Heilig filed an Answer. See Doc. 36.

[2] In considering Defendants' Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Stoddard, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

Stoddard contends, however, that on April 9, 2020, Heilig walked into Stoddard's bunk and attacked him, "punching [Stoddard] in the face and head for several minutes, yelling that '[Stoddard] was trying his girl.'" Id. Stoddard asserts that during the beating, Heilig pulled out chemical agents and was preparing to spray Stoddard when other inmates intervened and stopped Heilig's assault. Id. Heilig then cautioned the other inmates to "keep their mouths shut" before exiting the dorm. Id.

After the attack, Smith reviewed video footage of the assault, apologized to Stoddard, and advised him he would report the incident. Id. McGee then placed Stoddard in restraints and escorted him to medical where Stoddard complained about his injured eye. Id. Officials later transferred Stoddard to RMC Main where the Inspector General's Office interviewed him and advised that they intended to prosecute Heilig for the attack. Id. at 7. According to Stoddard, he still experiences severe pain in his left eye, headaches, emotional trauma, and now must wear glasses because of the permanent damage. Id. As relief, he seeks monetary and punitive damages. Id. at 8-9.

### III. Summary of the Arguments

In their Motion, Defendants Smith and McGee argue the Court should dismiss Stoddard's claims against them because: (1) Stoddard failed to properly exhaust his administrative remedies; and (2) Stoddard's request for punitive damages is statutorily barred. See generally Motion. In his Response,

Stoddard argues the Court should not dismiss his claims against Smith and McGee because: (1) he exhausted his administrative remedies, and (2) he is entitled to punitive damages. See generally Response.

### IV. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires Stoddard to exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Stoddard need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and

4

unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).[3] Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Stoddard] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance

6

at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007.

Here, Defendants argue Stoddard did not exhaust his administrative remedies for his failure to protect claims because Stoddard mentioned neither Smith nor McGee in his administrative grievance, and he failed to include allegations about his claims against Smith and McGee. Motion at 11-12. In his Response, Stoddard asserts he exhausted his administrative remedies. Response at 2. According to Stoddard, his grievance contained allegations about his failure to protect claims. Id. He also contends that during the Office of the Inspector General's investigation, he advised officials that Smith and McGee knew about Heilig's threats before the attack. Id. at 1-2.

Accepting Stoddard's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

In turning to the second step of Turner, the Court looks at the sole grievance at issue – Stoddard's informal grievance (log # 209-2004-0204)

submitted to the Warden on April 17, 2020. See Doc. 24-1. That grievance states:

> My grieving issue is that I was assaulted by security staff, and am still being held in said institution. On 4-9-20 Laundry Officer "H[eilig]" had entered E-dormitory around 12:00pm. Came to my assigned bunk (E-2-112) and told my bunk mate to leave. Said officer repeatedly and very loudly said I was a "p---y f--k boy ect. Putting his crotch in my face, then proceeded to shove me, then started to punch me in the face. All forementioned is witnessed by E-2-Security cameras. And has been reviewed by several security person[n]el. As a remedy to this grievance, I not only wish to file formal assault charges but to[] also be transferred immediately to an institution that I may safely be housed at[.] Either Madison C.I. or an Interstate transfer to Ohio, this shall be done d[ue] to the validity of all for[e]mentioned and the fact that due to the nature of event, creates future retaliation and because it was overlooked that I was in jeopardy from this officer.

Id. Officials approved the informal grievance on April 22, 2020, stating:

> Your informal grievance has been received, reviewed and evaluated. The issue of your complaint has been referred to the Office of the Inspector General for appropriate action. Upon completion of the necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you.
>
> As action has been initiated, you may consider your appeal approved from that standpoint. This does not constitute substantiation of your allegations.

Id.

The parties do not dispute that this informal grievance and officials' approval of that grievance was enough to exhaust Stoddard's excessive force claim against Heilig. Motion at 11; see, e.g., Dombrowski v. Wilson, No. 3:21-cv-1199-BJD-PDB, 2023 WL 2403857, at *3 (M.D. Fla. Mar. 8, 2023) (finding that the plaintiff exhausted his administrative remedies because his informal grievances were approved). Defendants Smith and McGee, however, assert Stoddard's allegations in informal grievance (log # 209-2004-0204) did not sufficiently exhaust his failure to protect claims against them. They make two arguments to support that contention.

First, Defendants Smith and McGee argue Stoddard failed to exhaust his claims against them because Stoddard mentioned neither Smith nor McGee in informal grievance (log # 209-2004-0204). Motion at 11. But in evaluating whether Stoddard has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010); see also Brown v. Sikes, 212 F.3d 1205, 1210 (11th Cir. 2000) (finding that the plaintiff exhausted his claim even though his grievance named no one). Thus, this argument fails.

Second, Defendants Smith and McGee contend Stoddard did not exhaust his claims against them because Stoddard's informal grievance (log # 209-

9

2004-0204) did not contain allegations indicating he sought to raise failure to protect claims. Motion at 11-12. Stoddard, on the other hand, argues that he did include allegations about his failure to protect claims. Response at 2. Notably, he maintains the last sentence of his informal grievance – "because it was overlooked that I was in jeopardy from this officer" – was sufficient to place the institution on notice that other officials knew of but disregarded Heilig's threat to Stoddard. Response at 2. The Court agrees.

When deciding how much detail is required in a grievance for exhaustion, the Court notes the grievance must contain enough information to put the facility on notice of the issues and allow the facility an opportunity to investigate and resolve the dispute without judicial intervention. See Chandler, 379 F.3d at 1287. Generally, "a prisoner, who is of course typically uncounseled, need not present legal theories in his grievances." Johnson v. Johnson, 385 F.3d 503, 517 (5th Cir. 2004). And the prison system's own rules about the grievance process provide guidance. Id. Notably, in Florida, Form DC6–236 for informal grievances includes no instructions on what information must be provided. See Fla. Admin. Code R. 33-103.005(2). Rather, the FDOC's only requirement is that the "inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." Fla. Admin. Code R. 33-103.005(2)(b)2. Thus, "[b]y its terms, this mandates no level of detail at all, requiring only that whatever facts are stated

must be true." Goldsmith v. White, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).[4]

Here, Stoddard's informal grievance (log # 209-2004-0204) contains the core facts about the circumstances of Heilig's attack. While Stoddard did not include specific language outlining the legal elements of a failure to protect or intervene claim, Stoddard included allegations indicating other officials knew about the danger Heilig posed but they disregarded that threat. To that end, the Court finds that Stoddard's informal grievance (log # 209-2004-0204) alerted prison officials that other officers failed to protect Stoddard from Heilig's attack. See Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004) (holding that the exhaustion requirement is satisfied if the grievance "served its function of alerting the state and inviting corrective action"); see also Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) ("As in a pleading system, the grievant need not lay out facts, articulable legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.). And thus, Stoddard exhausted his administrative remedies for his claims against Smith and McGee. As such, the Motion is due to be denied

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

11

on this issue.

## V. Punitive Damages

Defendants Smith and McGee argue that Stoddard's request for punitive damages must be dismissed because it is statutorily barred. Motion at 12-14. According to Defendants, 18 U.S.C. § 3626(a)(1)(A) precludes punitive damages in all civil rights cases because such damages constitute "prospective relief." Id. at 12-13. In support of their contention, Defendants argue punitive damages "are never necessary to correct a violation of a federal right." Id. at 13. They also contend that even if an award of punitive damages is necessary to correct such a legal violation, that award could not satisfy the PLRA's "stringent limitations" as the relief is neither "narrowly drawn" nor "the least intrusive means necessary to correct the violation of the Federal right." Id. at 13-14. In his Response, Stoddard argues his request for punitive damages is not statutorily barred and "is necessary to compensate for future loss that is directly and exclus[]ively stemming from Defendants['] 'quasi-criminal' action." Response at 3-6.

Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than

> necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Defendants are correct that punitive damages are considered "prospective relief" under § 3626. See Johnson v. Breeden, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), abrogated on other grounds by Kingsley v. Hendrickson, 576 U.S. 389, 395 (2015)). But their argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is wholly misplaced. Indeed, they cite Johnson as their primary support for this notion, but Johnson did not hold that punitive damages were unavailable under § 3626 for § 1983 cases. Instead, in Johnson, the Eleventh Circuit clarified, in the context of a § 1983 civil rights case, that § 3626(a)(1)(A) merely provides the framework for awarding punitive damages. Id. at 1325. It explained "a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case . . . [and] that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so." Id.

While the Court is unaware of an Eleventh Circuit case that has addressed Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. Hoever v. Marks, 993 F.3d 1353, 1364 (11th Cir. 2021).[5] And it has held "[p]unitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." Barnett v. MacArthur, 715 F. App'x 894, 905 (11th Cir. 2017). Also, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an instruction on awarding punitive damages. See Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights – 42 U.S.C. § 1983 Claims – Damages § 5.13.

The Court also finds persuasive other district court decisions explicitly finding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil cases. See, e.g., Brown v. Semple, No. 3:16cv376, 2018 WL 4308564, at *14 (D. Conn. Sept. 10, 2018) (collecting cases); Douglas v. Byunghak Jin, No. 11-0350, 2014 WL 1117934, at *4-5 (W.D. Penn. Mar. 20,

---

[5] In Hoever, the Eleventh Circuit declined to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626. Hoever, 993 F.3d at 1364 n.5.

14

2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms"). Thus, the Court finds that § 3626 does not preclude a request for punitive damages in this § 1983 action, and Defendants' Motion is due to be denied on this issue.

Accordingly, it is

**ORDERED:**

1. Defendants Smith and McGee's Motion to Dismiss Complaint (Doc. 24) is **DENIED**.

2. Defendants Smith and McGee shall file an answer to the Complaint by **May 15, 2024**. The Court will issue a separate order setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of April, 2024.

MARCIA MORALES HOWARD
United States District Judge

Jax-7
C:   Russell A. Stoddard, #V03964
     Counsel of record